J-A06043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL KEITH HOPKINS | : | |
| | : | |
| Appellant | : | No. 598 WDA 2020 |

Appeal from the Judgment of Sentence Entered April 4, 2018
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000573-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED:  March 26, 2021**

Daniel Keith Hopkins (Appellant) appeals, *nunc pro tunc*, from the judgment of sentence imposed in the Jefferson County Court of Common Pleas.  The trial court sentenced Appellant to an aggregate term of 95 to 190 years' imprisonment, following his jury conviction of two counts of corrupt organizations,[1] one count of criminal conspiracy,[2] and eighteen counts of possession with intent to deliver controlled substances,[3] for his participation in an interstate drug ring.  On appeal, Appellant challenges the discretionary aspects of his sentence.  We affirm.

---

[1] 18 Pa.C.S. §§ 911(b)(3), (4).

[2] 18 Pa.C.S. § 903.

[3] 35 P.S. §§ 780-113(a)(30).

In a prior appeal, a panel of this Court summarized the relevant facts and procedural history as follows:

Between November 8, 2016, and August 2, 2017, Appellant, Larry Dean, and others conspired to sell and sold 35 pounds of crystal methamphetamine worth $1.6 million throughout central Pennsylvania. Appellant supplied the methamphetamine in Altoids mint tins, sent through priority mail packages from Arizona, to Dean, who distributed the methamphetamine[ ] to a circle of drug traffickers in Clarion, Clearfield, Elk, Forest, and Jefferson Counties in Pennsylvania. The Pennsylvania State Police, the Office of the Attorney General, several local police departments, and the United States Postal Service conducted an extensive joint investigation ("Operation Snail Mail") involving controlled purchases, wiretaps, and review of financial documents and wire transfers. Following a grand jury investigation and presentment naming 30 co-conspirators, Appellant was arrested in Arizona and transferred to Pennsylvania to stand trial. . . .

[Appellant and Dean were tried together.] A four-day joint trial commenced on March 19, 2018, in which, *inter alia*, a postal inspector, drug traffickers, and the drug traffickers' associates testified on behalf of the Commonwealth. A jury convicted Appellant of one count each of Corrupt Organizations, Conspiracy to Commit Corrupt Organizations, and Conspiracy to Deliver a Controlled Substance, and eighteen counts of Delivery of a Controlled Substance.

On April 4, 2018, the trial court sentenced Appellant to an aggregate term of 95 to 190 years of imprisonment.[6] Appellant filed a Post-Sentence Motion challenging, among other things, the court's exercise of discretion in imposing consecutive terms of incarceration that rendered his aggregate sentence excessive. The trial court denied the Post-Sentence Motion.

_____

[6] The court imposed the sentences as follows: a term of 2 and ½ to 5 years' incarceration for each of the Corrupt Organizations convictions, to be served concurrently, a consecutive term of 5 to 10 years' incarceration for Conspiracy; . . . terms of 5 to 10 years' incarceration for [17] of the Delivery convictions, each to be served consecutively[; and a consecutive term of two and one-

half to five years for the delivery charge at Count 12,] for an aggregate of 95 to 190 years' incarceration.

*Commonwealth v. Hopkins*, 779 WDA 2018 (unpub. memo. at 2-3) (Pa. Super. Oct. 4, 2019).

Appellant filed a direct appeal, in which he argued, *inter alia*, his sentence was excessive. This Court affirmed Appellant's judgment of sentence on October 4, 2019, concluding nearly all of his arguments — including his sentencing claim — were waived as a result of direct appeal counsel's failure to develop the arguments in the brief.[4] *See Hopkins*, 779 WDA 2018 (unpub. memo. at 5-10, 12). Appellant did not seek allowance of appeal in the Pennsylvania Supreme Court.

On January 29, 2020, Appellant filed a timely, *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA).[5] Counsel was appointed and filed an amended petition on April 21, 2020,[6] requesting reinstatement of

---

[4] The panel did address, and reject, Appellant's claim that the verdict was against the weight of the evidence. *See Hopkins*, 779 WDA 2018 (unpub. memo. at 10-12).

[5] 42 Pa.C.S. §§ 9541-9546.

[6] We note that after counsel was appointed on February 5, 2020, Appellant filed a motion requesting to proceed *pro se*. *See* Appellant's Motion for Correction of an Error of the P.C.R.A. Court, 2/20/20, at 1-2. That same day, the PCRA court scheduled a *Grazier* hearing for April 13th. *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998) (requiring "on-the-record determination" of voluntariness of waiver of right to counsel at appellate stages). However, on March 9, 2020, Appellant submitted another *pro se* filing, in which he withdrew his request to dismiss counsel. *See* Appellant's Petition to Withdraw Motion for Dismissal of P.C.R.A. Counsel, 3/9/20.

Appellant's post-sentence and direct appeal rights due to prior counsel's ineffectiveness for failing to develop arguments on direct appeal. On June 1, 2020, the PCRA court granted Appellant's requested relief. *See* Order, 6/1/20.

Appellant filed a post-sentence motion *nunc pro tunc* on June 8, 2020, in which he argued the sentence imposed by the trial court was "clearly unreasonable," based upon "impermissible factors," and "essentially guaranteed [him] life imprisonment." Appellant's Post-Sentence Motion, 6/8/20, at 2-3. Appellant also insisted the trial court failed to address his "rehabilitative needs" and "disproportionately punishe[d him] in excess of what [was] necessary" pursuant to the Sentencing Code. *Id.* at 3-4. The trial court denied the motion that same day. *See* Order, 6/8/20. This timely *nunc pro tunc* appeal follows.[7]

Appellant raises one issue on appeal:

Did the trial court abuse its discretion in entering its April 4, 2018, sentencing orders in the within case?

Appellant's Brief at 3.

Appellant's sole issue on appeal challenges the discretionary aspects of his sentence. It is well-established that such a challenge does not entitle an

_____

Counsel then requested, and was granted permission to file the amended petition.

[7] Appellant complied with the trial court's directive to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

appellant to "review as of right." ***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*). Rather,

> [b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements:
>
>> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Id.*** (some citations omitted).

In the present case, Appellant filed a timely, *nunc pro tunc*, notice of appeal, and preserved his claim in a timely-filed, *nunc pro tunc*, post-sentence motion. ***See*** Appellant's Post Sentence Motion at 2-4. In addition, he has included in his brief the requisite statement of reasons relied upon for appeal pursuant to Pa.R.A.P. 2119(f). ***See*** Appellant's Brief at 11-13. Accordingly, we must now determine whether Appellant's claim raises a substantial question.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Conte***, 198 A.3d 1169, 1174 (Pa. Super. 2018) (citation omitted), *appeal denied*, 206 A.3d 1029 (Pa. 2019). Here, Appellant argues the trial court imposed an aggregate term of imprisonment that is "manifestly

excessive," and essentially "a life sentence for nonviolent offenses." Appellant's Brief at 11-12. Further, he insists the trial court considered "impermissible factors" in imposing his sentence, and failed to consider his rehabilitative needs pursuant to 42 Pa.C.S. § 9721(a). **See id.** at 12-13. We conclude these allegations raise a substantial question for our review. **See Commonwealth v. Pacheco**, 227 A.3d 358, 376 (Pa. Super. 2020) ("[A]n allegation that the court considered an impermissible sentencing factor raises a substantial question."), *appeal granted in part on other grounds*, 237 A.3d 396 (Pa. 2020); **Commonwealth v. Caldwell**, 117 A.3d at 770 ("Appellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question."); **Commonwealth v. Mastromarino**, 2 A.3d 581, 587 (Pa. Super. 2010) (explaining a substantial question is raised when "the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue").

Our standard of review is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Caldwell***, 117 A.3d at 770 (citations omitted).  Further, as our Supreme Court elaborated in ***Commonwealth v. Walls***, 926 A.2d 957 (Pa. 2007):

> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is "in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it." ***Commonwealth v. Ward***, . . . 568 A.2d 1242, 1243 ([Pa.] 1990); ***see also Commonwealth v. Jones***, . . . 613 A.2d 587, 591 ([Pa. Super.] 1992) (*en banc*) (offering that the sentencing court is in a superior position to "view the defendant's character, displays of remorse, defiance or indifference and the overall effect and nature of the crime."). Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. . . .

***Id.*** at 961.

In the present case, Appellant concedes that all of his individual sentences fall within or below the standard range of the Sentencing Guidelines.  ***See*** Appellant's Brief at 8-9 (listing guideline ranges and sentences imposed for each conviction).  However, because the trial court directed all, but one, of the 21 sentences run consecutively, the aggregate sentence imposed is 95 to 190 years' imprisonment.

> When considering a sentence imposed within the sentencing guidelines,
>
> we must review to determine whether the trial court's sentence is 'clearly unreasonable." 42 Pa.C.S. § 9781(c)(2). An "unreasonable" decision from the sentencing court would be one that is 'irrational' or 'not guided by sound judgment.'"

The reasonableness inquiry is to be a "fluid" one, based in part on the factors set forth in § 9781(d) of the sentencing code:

> **(d) Review of record.** — In reviewing the record the appellate court shall have regard for:
>
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.[ ] § 9781(d). In addition, a sentence may be unreasonable if the sentencing court fails to consider the factors set forth in § 9721(b).

*Commonwealth v. Dodge*, 957 A.2d 1198, 1200 (Pa. Super. 2008) (some citations omitted). Section 9721(b) of the Sentencing Code requires a trial court to impose a sentence that is "consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). As our Supreme Court opined in *Walls*:

> [E]ven though the unreasonableness inquiry lacks precise boundaries, we are confident that rejection of a sentencing court's imposition of sentence on unreasonableness grounds would occur infrequently, whether the sentence is above or below the guideline ranges, especially when the unreasonableness inquiry is conducted using the proper standard of review.

*Walls*, 926 A.2d at 964.

We recognize Appellant's aggregate minimum sentence of 90 years' imprisonment is lengthy. Nevertheless, we emphasize that each individual sentence was imposed either within or, in many cases, **below** the standard

range of the sentencing guidelines. *See* Appellant's Brief at 8-9. In its opinion following Appellant's initial direct appeal, the trial court explained why it chose to run nearly all of Appellant's sentences consecutively:

> This was not an instance where the Commonwealth charged [Appellant] with multiple crimes based on the same incident. Rather, each count of Delivery of a Controlled Substance pertained to a separate and distinct instance of [Appellant] deliberately reaching out to Jefferson or a nearby county with a shipment of crystal methamphetamine. He purposely prepared eighteen packages containing the illicit substance for distribution and use in this area. He did not do it alone, either; rather, he laid his plan with the help of Larry Dean and knowingly engaged with him[ and other co-conspirators] to make sure his product was sold for financial gain. Whereas each step of the process was deliberate and calculated, and whereas each step created a new and distinct harm, therefore, it was not an abuse of discretion for the [c]ourt to recognize as much by running all but one sentence consecutively.

Trial Ct. Op., 9/21/18, at 6-7. As this Court has repeated on numerous occasions, a defendant is "not entitled to a 'volume discount' for his multiple offenses." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (rejecting excessiveness challenge to sentence of 633 to 1,500 years' imprisonment following defendant's conviction of more than 300 offenses in connection with the repeated sexual abuse of minor stepdaughter over six year period; not all sentences imposed consecutively).

Nevertheless, as Appellant emphasizes in his brief, an appellate court may vacate a sentence imposed within the guidelines if "the case involves circumstances where application of the guidelines would be clearly unreasonable." *See* Appellant's Brief at 18. Here, Appellant insists his

aggregate sentence "for nonviolent crimes" is excessive and "clearly unreasonable." *Id.* at 16. Furthermore, he maintains that while the trial court explicitly considered some of the factors listed in Section 9721(b) of the Sentencing Code, it "neither expressly nor implicitly considered [his] rehabilitative needs[; rather his] sentence is mainly one of punishment[.]" *Id.* at 20-21. Lastly, Appellant maintains the trial court relied on impermissible factors in imposing his sentence. He emphasizes the following statements made by the court during the sentencing hearing:

> Each one of [the mailed packages of crystal methamphetamine] was a separate act. Each one of them resulted in addiction, I'm sure, without question.
>
> Some of them may have resulted in death, we don't know, but we know that you're a person who took advantage of delivering poison through the pipeline of the U.S. mail.

N.T., 4/4/18, at 6-7. Appellant emphasizes there was no evidence presented at trial that "each delivery resulted in addiction" or that any of the deliveries "resulted in death." Appellant's Brief at 21. We conclude no relief is due.

Preliminarily, we note the trial court had the benefit of a pre-sentence investigation report (PSI), which the court considered prior to imposing sentence. *See* N.T., 4/4/18, at 3. "When a sentencing court has reviewed a [PSI], we presume that the court properly considered and weighed all relevant factors in fashioning the defendant's sentence." *Commonwealth v. Baker*, 72 A.3d 652, 663 (Pa. Super. 2013). *See also Commonwealth v. Bonner*, 135 A.3d 592, 605 (Pa. Super. 2016) ("Where [a PSI] exist[s], we [ ] presume that the [trial court] was aware of relevant information regarding the

- 10 -

defendant's character and weighed those considerations along with mitigating statutory factors[; a PSI] constitutes the record and speaks for itself.").

Here, the trial court explicitly stated it considered the PSI, which detailed Appellant's criminal history. The court noted:

> [Y]our prior record . . . is all from Arizona, the state where you lived, starting with a DUI in [19]98 to driving under suspension in 2014.
>
> The presentence lists your prior record score at five.[8] It's been a fairly consistent situation, at least having some charges every few years, one felony for some type of drug violation while you were on probation, and the rest, all misdemeanors.

N.T., 4/4/18, at 3. Thus, while the trial court did not specifically mention Appellant's rehabilitative needs, its review of his PSI and "fairly consistent" prior record implies that it did take his rehabilitative needs into consideration when imposing its sentence. Moreover, Appellant fails to identify any of his purported "rehabilitative needs" that the court should have considered more carefully. Rather, he simply asserts the facts of his case are comparable to *Dodge*. *See* Appellant's Brief at 20. We disagree.

In *Dodge*, a panel of this Court vacated the defendant's aggregate term of 57½ to 111 years' imprisonment, which was "comprised of 37 consecutive, standard range . . . sentences[,]" for non-violent offenses. *Dodge*, 957 A.2d at 1199. In doing so, this Court opined:

---

[8] A prior record score of five is the maximum score a defendant can receive when they are not categorized as a repeat violent offender or a repeat felony offender. *See* 204 P.S. § 303.4(a)(3).

- 11 -

We do not quibble with the sentencing court's conclusion that [the defendant's] multiple offenses and long criminal history warrant a lengthy period of incarceration. Nonetheless, the court did not acknowledge that its sentence essentially guarantees life imprisonment for [the defendant]. Likewise, the court did not acknowledge that the life sentence is comprised largely of consecutive sentences for receiving stolen costume jewelry. We acknowledge that many of the stolen items, though of little monetary value, were of significant sentimental value to the victims. The sentimental value of these items is an appropriate consideration in imposing a sentence. Nonetheless, we conclude that, based on the record before us, the trial court abused its discretion in imposing a life sentence for non-violent offenses with limited financial impact.

*Id.* at 1202.

Appellant asserts his convictions, too, are for non-violent offenses, and the trial court "did not even acknowledge[ ] that its sentence essentially guaranteed [him] a life sentence." *See* Appellant's Brief at 16, 20. Preliminarily, we note that, at Appellant's sentencing hearing, the trial court explicitly stated its sentence "would lead to a total aggregate sentence of no less than 95 nor more [than] a hundred and ninety years." N.T., 4/4/18, at 10. Moreover, we view Appellant's convictions differently from those in *Dodge*. Indeed, Appellant's charges resulted from a multi-jurisdictional investigation, in which Appellant and numerous co-conspirators trafficked, through at least 18 separate deliveries, $1.6 million worth of crystal methamphetamine throughout multiple counties in central Pennsylvania. While Appellant's drug delivery and corrupt organizations offenses are technically non-violent, we detect no abuse of discretion on the part of the

trial court for its consideration of the impact the drug trade has on the community.

Furthermore, we disagree with Appellant's contention that the trial court relied upon impermissible factors when imposing his sentence. Although the court mentioned addiction and drug-related deaths, it did not indicate that it relied on either of these two factors when imposing sentence, nor was it unreasonable for the court to presume Appellant's trafficking in crystal methamphetamine resulted in drug addictions. Rather, the length of Appellant's sentence was due to the imposition of consecutive terms for each of his drug delivery charges. As noted **supra**, the trial court explained that it imposed consecutive sentences because each separate mailing of crystal meth was "deliberate and calculated, and . . . created a new and distinct harm." Trial Ct. Op. at 6.

Moreover, contrary to Appellant's characterization, we conclude the trial court's statements in the present case are not similar to those deemed improper in **Commonwealth v. Sypin**, 491 A.2d 1371 (Pa. Super. 1985). In that case, the defendant pled guilty to involuntary deviate sexual intercourse and corruption of minors for his sexual abuse of a nine-year-old boy. **Id.** at 1372. At sentencing, the trial court commented:

> As you know, there are thousands of kids, and I mean it's thousands of kids that disappear every year. . . .
>
> Youngsters that no one ever sees or hears from again. Sometimes they're found dead; sometimes they're never found. . . .
>
> And their problems result from men like you. . . .

*Id.* (citation omitted). On appeal, this Court vacated the judgment of sentence, concluding the trial court relied on factors not related to his case: "[The defendant] was not charged in connection with the disappearance or death of any child." *Id.*

Here, as we noted above, the trial court's reference to the addictive nature of crystal methamphetamine was not an impermissible consideration. Further, the court clearly stated it had **no knowledge** if Appellant's actions resulted in any deaths. As the Commonwealth argues in its brief: "[W]hat the sentencing court was simply acknowledging was the reality that illicit trafficking of methamphetamine is a risky business with many potential human costs including the possibility of death." Commonwealth's Brief at 6. Thus, we reject Appellant's assertion that the court's lengthy sentence was based upon impermissible factors.[9]

_____

[9] Appellant's string citation to several other "impermissible factors" cases is similarly unavailing. *See* Appellant's Brief at 23. In **Commonwealth v. Bethea**, 379 A.2d 102 (Pa. 1977), the Pennsylvania Supreme Court vacated the defendant's sentence after concluding the court's remarks before imposing sentence "may have been influenced by the fact that [the defendant] chose to stand trial rather than plead guilty[.]" **See id.** at 105-07 ("If you had pled guilty, perhaps you were involved, there is no question in my mind, but had you pled guilty it might have shown me the right side of your attitude about this, but you pled not guilty, fought it all the way, and the jury found you guilty, and I'm going to sentence you at this time."). In **Commonwealth v. Stufflet**, 469 A.2d 240 (Pa. Super. 1983), this Court vacated the defendant's sentence after the sentencing court indicated that it considered the fact that the defendant's co-defendant raped one of the victims of their burglary, despite the fact the defendant was not charged with rape. *Id.* at 243. Similarly, in **Commonwealth v. Karash**, 452 A.2d 528 (Pa. Super. 1982), a panel of this Court vacated the defendant's sentence when the trial court

Accordingly, no relief is warranted and we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2021

---

revealed it relied upon newspaper and television reports of the defendant's purported escape when he was first arrested, despite the fact he was not tried for that crime. *Id.* at 529. Lastly, in ***Commonwealth v. Cruz***, 402 A.2d 536 (Pa. Super. 1979), this Court concluded that the Commonwealth's assertion that the defendant — who was convicted only of selling four packets of heroin — was a "weight dealer" of narcotics, "based upon information from unnamed informants and undercover agents[,]" was an improper consideration for the sentencing court. *Id.* at 538. Nevertheless, because the defendant "did not object to the Commonwealth's assertion but merely pointed out that the instant case did not involve large quantities of heroin," we concluded the defendant waived the claim on appeal. *Id.* The sentencing hearing in the present case featured none of the blatant consideration of impermissible factors as was present in these cases.